**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RICO SHANDEL YOUNG,**

      **Petitioner,**

v.                                         **Case No. 8:12-cv-1657-T-27TGW**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Petitioner Rico Shandel Young, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and memorandum of law (Dkt. 2). He challenges his convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 1998. Respondent filed a response (Dkt. 9) and Petitioner filed a reply (Dkt. 12). Upon review, the petition must be denied.

### Procedural History

A jury convicted Petitioner of armed burglary of a conveyance with a firearm (count one), grand theft firearm (count two), and obstructing or opposing an officer without violence (count three). (Dkt. 11, Ex. 3.) Petitioner was sentenced to life in prison on count one, five years in prison on count two, and time served on count three. (Dkt. 11, Ex. 5.) The state appellate court *per curiam* affirmed his convictions and sentences. (Dkt. 11, Ex. 9.)

Petitioner filed a state habeas petition, alleging ineffective assistance of appellate counsel. (Dkt. 11, Ex. 12.) The state appellate court denied his petition without comment. (Dkt. 11, Ex. 15.)

Petitioner filed a motion and an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 11, Exs. 16, 17.)  The state court denied some of his claims and conducted an evidentiary hearing on the remaining claims. (Dkt. 11, Exs. 18, 20.)  Following the evidentiary hearing, the state court denied Petitioner's motion for postconviction relief. (Dkt. 11, Ex. 21.)  However, the state court granted Petitioner's motion for rehearing on ground five, vacated Petitioner's judgment and sentence, and ordered that a new trial be held. (Dkt. 11, Exs. 23, 25.)  The state appellate court reversed this decision and remanded for reinstatement of the judgment and sentence. *State v. Young*, 932 So.2d 1278 (Fla. 2d DCA 2006).

Petitioner later was granted a belated appeal of the denial of his postconviction motion. (Dkt. 11, Ex. 43.)  The state appellate court reversed the postconviction court's denial of relief on ground three and remanded to the state postconviction court for further proceedings. *Young v. State*, 988 So.2d 650 (Fla. 2d DCA 2008).  It affirmed the denial of relief with regard to all other claims. *Id*. On remand, the state postconviction court entered an order denying ground three of Petitioner's postconviction motion and subsequently denied Petitioner's motion for rehearing. (Dkt. 11, Exs. 49, 50.)  The state appellate court *per curiam* affirmed the order of denial. (Dkt. 11, Ex. 51.) Respondent does not contest the timeliness of the federal habeas petition.

## Factual Background[1]

Petitioner's charges resulted from an incident in which a gun was taken from a vehicle. At approximately 12:15 a.m. on March 28, 1998, Joseph Greco woke up when he heard noises outside his house.  He saw Petitioner, holding a hammer in one hand and a large screwdriver in the other, approaching his car.  Greco thought Petitioner appeared ready to hit the trunk with the screwdriver.

---

[1] This factual summary is derived from the trial testimony and the briefs filed on direct appeal.

Greco went outside, pointed a gun at Petitioner, and told him to get on the ground.  Greco yelled at neighbors to call the police.  He observed that Petitioner wore a knit cap that was rolled up on the bottom.  Greco held Petitioner at gunpoint while waiting for police.

After Officer Gary Pruitt arrived, Petitioner fled.  Pruitt chased Petitioner but did not apprehend him.  Pruitt noticed that he wore a knit cap that was rolled up.  When Pruitt returned to the scene, he and Greco saw that the driver's side window of Greco's car was broken and that the car's center console, which Greco had left closed, was open.  A gun Greco kept in the console was missing.  The lock on the car's trunk was also damaged.  Petitioner was arrested several weeks later.  When Officer Jean Strickland conducted a search of Petitioner's person at the time of arrest, Strickland found in Petitioner's pocket a knit cap that had eye holes cut out of it.

Pruitt did not identify Petitioner at trial, but Greco did.  At the time of the incident, the area outside his house was sufficiently well-lit for him to see Petitioner.  As Greco held him at gunpoint, Petitioner asked to be let go, stating that Greco knew him and that his grandmother lived "right there."  Petitioner pointed in the direction of two vacant lots separating Greco's house from Petitioner's grandmother's house.  Additionally, Greco recognized Petitioner from a recent encounter at the home of another neighbor, Robert Alexander, who did some work painting houses for Greco.  Greco recalled that several weeks before the crimes, when he approached the Alexander residence to ask for help removing paint cans from the trunk of his car, Petitioner answered the door.  Greco further recalled that Petitioner and one of Robert Alexander's sons, Jason Alexander, removed the paint cans.  A rifle, which was stored in a case, was located inside the trunk.  Greco believed Petitioner saw it and thought this was suspicious.  Although Greco had seen Petitioner around the neighborhood a few times, this incident was a more definitive basis for his identification of Petitioner.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In decisions without comment or discussion, the state appellate court denied Petitioner's state habeas petition and affirmed the denial of all grounds of his postconviction motion except ground five. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398. Petitioner bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### Exhaustion of State Remedies; Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell,* 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised

the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

## Discussion

### Ground One

Petitioner asserts that appellate counsel was ineffective for failing to raise numerous arguments on direct appeal. He contends counsel should have argued that (1) the trial court abused its discretion when responding to the jury's request for a "read back" of testimony; (2) the State improperly made "golden rule"[2] arguments; (3) the State's evidence was insufficient to support his convictions; and (4) the trial court erred in denying his motion to suppress.

---

[2] Golden rule arguments "are arguments that invite the jurors to place themselves in the victim's position during the crime." *Braddy v. State*, 111 So.3d 810, 842 (Fla. 2012) (quoting *Mosley v. State*, 46 So.3d 510, 520 (Fla. 2009)).

In his state habeas petition, Petitioner only asserted that appellate counsel was ineffective for failing to argue that the trial court abused its discretion when it responded to the jury's request for a "read back" of testimony.  (Dkt. 11, Ex. 12.)  He did not raise the other three allegations of ineffective assistance of appellate counsel.  (Id.)[3]  These claims are therefore unexhausted.

Petitioner cannot return to state court to file an untimely petition alleging ineffective assistance of appellate counsel.  *See* Fla. R. App. P. 9.141(d)(5).  Consequently, the claims are procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Petitioner does not argue or demonstrate that an exception applies to overcome the procedural default.  *See id.*  Accordingly, these claims of ineffective assistance of appellate counsel are barred from federal habeas review.

Furthermore, Petitioner is not entitled to relief on his exhausted claim that appellate counsel was ineffective for not arguing that the trial court abused its discretion with regard to the jury's request for a "read back" of testimony.  Claims of ineffective assistance of counsel are governed by the law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions

---

[3] Appellate counsel did claim that the prosecutor improperly made golden rule arguments.  (Dkt. 11, Ex. 6, pp. 10-12.)

[of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could

have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

Claims that appellate counsel provided ineffective assistance are analyzed under the two-part test set forth in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal.  *Robbins*, 528 U.S. at 285-86.

The state appellate court rejected Petitioner's claim that appellate counsel was ineffective for failing to argue the trial court abused its discretion in responding to a jury request during deliberations.  The record reflects that the jury sent the following question to the court: "Your Honor, may we please read the court transcript of Officer Pruitt?"  (Dkt. 11, Ex. 2, p. 175.) The court

informed the jurors that no transcript had been made and that they must rely on their collective recollection of the testimony.  (Dkt. 11, Ex. 2, pp. 175-77.)  Although no transcript was available, counsel objected and requested that the court reporter read the testimony to the jury.  (Id.)

In support of his ineffective assistance claim, Petitioner argues that the trial court failed to comply with Florida Rule of Criminal Procedure 3.410, which provides that when the jury requests to have testimony read back, the court may order the testimony be read back to them.  Petitioner also cited Rule 3.410, as well as several Florida decisions concerning that Rule and jury requests to review testimony, in support of his state habeas petition.  (Dkt. 11, Ex. 12.)

While Petitioner's claim of ineffective assistance of appellate counsel is a federal question, his challenge to the application of Florida law and procedural rules is a state law matter.  A federal habeas court must defer to the state court's interpretation of state law and rules.  *See Will v. Sec'y for Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).  In rejecting this claim, the state appellate court answered what would have happened if appellate counsel had raised the claim of trial court error presented by Petitioner–the claim would have been denied.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such

matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005).

Petitioner has not demonstrated that the state appellate court's rejection of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Accordingly, he is not entitled to relief on Ground One.

**Ground Two**

Petitioner asserts that the prosecutor made improper comments, resulting in a due process violation. First, he claims the prosecutor improperly made golden rule arguments in his opening statement and closing argument by stating that Petitioner was every homeowner's nightmare. (Dkt. 1, p. 8.) Second, Petitioner asserts that the prosecutor implied that counsel acted improperly in "doing something to prevent Robert Alexander Jr. from coming in to testify." (Dkt. 1, p. 8.)[4]

Petitioner fails to assert a federal constitutional deprivation. A federal habeas court may entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, treaties, or the laws of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Therefore, federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Wainwright v. Goode*, 464 U.S. 78, 83 (1983). Issues of state law are not cognizable in a federal habeas action. *Branan v. Booth*, 861 F. 2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F. 2d 1053 (11th Cir. 1983).

---

[4] Robert Alexander, Jr., was a son of Greco's neighbors. The record indicates the State subpoenaed him for trial but he did not appear. During closing argument, the prosecutor said, "Well, Robert Alexander Jr. - - why wasn't he called? Where is he? He was subpoenaed last night in the State Attorney's Office. Where is he at?" (Dkt. 11, Ex. 2, p. 148.) Counsel's objection was sustained. Counsel subsequently moved for a mistrial, asserting that the State suggested the defense subpoenaed Robert Alexander, Jr., and that his absence was due to improper action by the defense. The court found that the State's comments, while improper, did not necessitate a mistrial. (Id., pp. 159, 161.)

Furthermore, even assuming his argument could be liberally construed as raising a federal issue, Petitioner did not assert a federal claim when he raised prosecutorial misconduct on direct appeal. (Dkt. 11, Ex. 6, pp. 9-12.) His failure to present a federal claim to the state court leaves the claim unexhausted. *See Picard,* 404 U.S. at 275-76. Petitioner cannot return to state court to file a second direct appeal. *See* Fla. R. App. P. 9.140. Consequently, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not argue or demonstrate that an exception applies to overcome the default. *See id.* Accordingly, Petitioner's claim is barred from federal habeas review.[5]

**Ground Four**

A.     Petitioner asserts that counsel should have called Jason Alexander as a witness to contradict Greco's testimony that Petitioner answered the door at the Alexanders' house and moved paint cans from Greco's car. The state court conducted an evidentiary hearing on Petitioner's claim. Petitioner testified to his belief that Jason Alexander would have stated that Petitioner was not present when Greco came to the Alexanders' house, and that Petitioner did not help take the cans of paint from the trunk of Greco's car. (Dkt. 11, Ex. 20, pp. 181-82.) Petitioner also testified that he believed counsel was going to call Jason Alexander. (Id., p. 182.)[6]

---

[5] Within his claim, Petitioner states that the trial court abused its discretion "when it held the same comments did not rise to the level of a mistrial." To the extent Petitioner attempts to raise an independent claim of trial court error for denying his motion for mistrial, he has failed to raise this claim as one presenting a federal question. Accordingly, the claim is not cognizable in his federal habeas petition. *See Branan*, 861 F. 2d 1507; *Carrizales*, 699 F. 2d 1053. Even if the claim was construed as raising a federal claim, it is unexhausted because Petitioner did not raise it on direct appeal. (Dkt. 11, Ex. 6.) Because state rules do not provide for a second direct appeal, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not establish the applicability of an exception to overcome the default. *See id.*

[6] Petitioner's trial counsel did not testify at the postconviction evidentiary hearing.

At trial, however, the defense called Ivon Alexander, Jason Alexander's mother.  She testified that she recalled Greco coming over to her house to drop off paint, and that she was certain Petitioner was not inside the house at that time.  (Dkt. 11, Ex. 2, pp. 93-94.)

After the evidentiary hearing, the state court denied Petitioner's claim of ineffective assistance of counsel:

> [T]he record reflects that during the course of the trial, counsel, through the testimony of Ms. Alexander, Jason Alexander's mother, was able to bring out this same testimony before the jury, wherein she testified as follows:
>
> Q:    Okay.  Did there come a point in time this year that there was a knock on the door–a knock on the door by Mr. Greco?
>
> A:    No, he didn't knock on the door, he called from outside the house.
>
> Q:    Okay.  And what did he say?
>
> A:    He had some paint to drop off and he needed someone to take it out of the car for him[.]
>
> Q:    You heard him.
>
> A:    Yes.
>
> Q:    Was Mr. Young in the house during that time?
>
> A:    No, sir.
>
> Q:    Did you know Rico Young?
>
> A:    Yes, I do.
>
> Q:    How do you know Mr. Young?
>
> A:    His grandmother lives next door to us.
>
> Q:    Mr. Young was not in that house?

A:    No, sir.

Q:    When you heard Mr. Greco what do you do?

A:    I answered the door and I went to see what he wanted.

Q:    And you answered the door and what did he say?

A:    He said he had some paint for my husband, and that he couldn't get it put [sic] of the trunk of the car.  He wanted my son to get it for him.

Q:    What did you do?

A:    I went and woke up my son and told him to get the paint out.

Q:    Which son was that?

A:    Jason.

Q:    What did Jason do?

A:    Well he–took his time, got up and went and got the paint.

Q:    And during that time at any point was Mr. Young in your home?

A:    No, sir.

Counsel further used that testimony in his closing argument to argue that Mr. Greco was mistaken and Defendant was not there.  Defendant fails to meet the first prong of the Strickland as he fails to show any deficient performance on the part of counsel where the testimony that Defendant wanted brought out through Mr. Alexander was already before the jury.  As such, no relief is warranted as to this part of ground 2 of Defendant's Motion.

(Dkt. 11, Ex. 21, pp. 221-22) (court's record citations omitted)

The record supports the state court's conclusion.  In addition, Petitioner did not call Jason Alexander at the postconviction evidentiary hearing, and presents no evidence to support his contention that Jason Alexander would have testified as Petitioner theorizes.  *See United States v.*

*Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). Consequently, Petitioner's claim is too speculative to warrant relief. *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)).

Furthermore, counsel chose to call Ivon Alexander to address this matter. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Petitioner does not show that the state court's rejection of this aspect of his claim was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

**B.**     Petitioner asserts that counsel was ineffective for failing to conduct adequate cross-examination of Greco and  Pruitt. He argues that the testimony of each witness regarding the location of the hammer and screwdriver and whether Petitioner was sitting or standing when Pruitt arrived contradicts the testimony of the other. Petitioner contends that in his deposition, Pruitt testified to finding the screwdriver on the trunk of the car.[7] Greco testified that he asked Petitioner to drop the tools, and Petitioner did so when he got on the ground. (Dkt. 11, Ex. 20, p. 56.) Pruitt testified at trial that the perpetrator was standing near a car when he arrived, and began running when

---

[7] At trial, Pruitt testified that he found a hammer and screwdriver when asked whether he located any tools "by the car." (Dkt. 11, Ex. 2, p. 32.)

Pruitt told him to come over.  (Id., pp. 27-28.)  Greco testified that Petitioner was sitting on a porch

stoop, and when police arrived, he jumped up and started running.  (Id., p. 61.)

After the evidentiary hearing, the state court denied this claim.  As to Greco, the state court

noted that "[t]he record reflects that counsel during his cross-examination of Mr. Greco attempted

to attack a previous meeting that Mr. Greco had with Defendant." (Dkt. 10, Ex. 21, p. 219.) The state

court cited a lengthy portion of the trial transcript in which counsel questioned Greco about going

to the Alexanders' house to drop off paint cans, and whether Greco was absolutely certain that it was

Petitioner who answered the door and went to the car.  The court concluded that, "[a]s counsel did

adequately cross-examine Joseph Greco Defendant fails to meet the first prong of the <u>Strickland</u>

test."  (Id., p. 220.)

With regard to Pruitt, the court determined that "[t]he record reflects that counsel adequately

cross-examined counsel [sic] on several issues during the trial." (Dkt. 10, Ex. 21, p. 220.)  The court

cited a portion of the trial transcript in which Pruitt stated on cross-examination that the area was

well-lit, yet acknowledged that it was difficult for him to see whether the suspect had facial hair.

The state court further concluded:

> Additionally, counsel was able to establish through cross-examination of Officer
> Pruitt that there were no fingerprints secured in this matter.  Furthermore, upon being
> called again to the stand again, counsel during cross-examination was able to secure
> some uncertainty in front of the jury as to whether or not the person was or was not
> wearing gloves.  As counsel did adequately cross-examine Officer Pruitt, Defendant
> fails to meet the first prong of the <u>Strickland</u> test.  As such, no relief is warranted as
> to this portion of ground 2.

(Id., p. 221) (court's record citations omitted)

The record supports the state court's finding that counsel adequately cross-examined both

witnesses.  Furthermore, in light of the totality of evidence presented at trial, Petitioner cannot

demonstrate that any inconsistencies about the precise location of the tools or whether he was already standing or jumped up and stood when Pruitt arrived were significant enough to warrant further cross-examination of Pruitt and Greco. Nor does he establish a reasonable probability that cross-examination about these specific factual matters would have changed the outcome of trial. Accordingly, Petitioner does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim. Consequently, he is not entitled to relief on Ground Four.

**Ground Three**

Petitioner contends that trial counsel was ineffective for failing to "set forth with specificity the grounds relied upon" when he moved for a judgment of acquittal. (Dkt. 1, p. 10.) In support, Petitioner claims that the State's evidence was insufficient to sustain his convictions for armed burglary of a conveyance and grand theft firearm. He asserts counsel should have specifically argued that there was no evidence Petitioner broke the car window or entered the car, that the stolen firearm was not recovered and was not seen in Petitioner's possession, and that Petitioner was only observed approaching the car with a hammer and screwdriver.

At the close of the State's case, counsel moved for a judgment of acquittal, stating, "We'll move for a JOA with the feeling on all the counts the State has failed to prove a prima facie case to link any physical evidence to my client." (Dkt. 11, Ex. 2, p. 85.) The motion was denied. (Id., p. 88.)

The state court denied Petitioner's ineffective assistance of counsel claim after an evidentiary hearing:

In alleging that trial counsel was ineffective for failing to file an adequate motion for judgment of acquittal, a defendant must establish that he "may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial." Boykin v. State, 752 So.2d 1203 (Fla. 2d DCA 1999).  In the instant action the following evidence was introduced against Defendant during the trial:

> Mr. Greco testified that he saw Defendant by the back of his car with a screwdriver in one hand and a hammer in the other.  Mr. Greco the [sic] gets a gun and goes out and sees Defendant approaching the trunk of his car and sees Defendant looking down and about ready to strike the screwdriver with the hammer.  Mr. Greco then holds Defendant at gun point until the police arrive.  Officer Pruitt and Mr. Greco testified after the officer came back they find damage to the trunk of the car where it was being struck with the screwdriver. The drivers's [sic] side window was smashed out and the inside of the car had been rifled through.  The glove compartment was open and papers were strewn in the inside and the console was propped in an up position.  Mr. Greco testified that he left the console in the down position and his 380 caliber gun that he used for self-defense was left in the console of the car that evening.  When Defendant was arrested about four weeks later by Officer Strickland he had in his possession a wool cap.  Mr. Greco testified that Defendant was wearing a wool cap.  Officer Pruitt testified that the person he chased was wearing a wool cap.  They both testified that the wool cap found on Defendant's person was consistent with the wool cap that you were wearing. Officer Strickland also testified that when she unraveled the wool cap there were two eye holes cut out of the wool cap.

Based upon the sufficiency of the evidence introduced at trial, Defendant fails to establish that he may very well have prevailed on a more artfully drafted motion for judgment of acquittal.  Defendant fails to meet the first prong of the Strickland test and, as such, no relief is warranted on ground 1.

(Dkt. 11, Ex. 21, p. 218)(court's record citation omitted)

The record supports the state court's findings.  The denial of a motion for judgment of

acquittal will be affirmed if the verdict is supported by competent, substantial evidence. Fitzpatrick

v. State, 900 So.2d 495, 507 (Fla. 2005).  In light of the totality of the evidence, including the

information cited in the postconviction order and Greco's identification of Petitioner, Petitioner does

not establish that the state court made an objectively unreasonable determination that he failed to show deficient performance of counsel.[8]   Moreover, he does not demonstrate that there is a reasonable probability the outcome of the proceeding would have been different had counsel presented more specific argument in his motion for judgment of acquittal.   Accordingly, Petitioner does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.[9]   Ground Three warrants no relief.

**Ground Five**

Counsel filed a motion for new trial, asserting that the prosecutor committed misconduct by referring to the incident as a homeowner's nightmare during opening and closing arguments, and informing the jury during closing arguments that the State subpoenaed Robert Alexander, Jr. (Dkt. 11, Ex. 49, Motion for New Trial.)  Prior to sentencing, the state court heard the motion and denied it.  (Id., Sentencing Transcript.)

Petitioner asserts that counsel was ineffective for not arguing in the motion for new trial that the verdict was contrary to the weight of the evidence.[10]   The state appellate court reversed the

---

[8] To prove armed burglary of a conveyance, the State was required to show that Petitioner entered a conveyance without invitation to do so and had the intent to commit an offense therein, and that in the course of committing the offense Petitioner was or became armed within the conveyance with a dangerous weapon. *See* § 810.02(1)(b), (2)(b), Fla. Stat.  To prove grand theft firearm, the State was required to show that Petitioner knowingly obtained or used, or endeavored to obtain or use, the property of another with intent to temporarily or permanently deprive the other person of a right to the property or a benefit from the property, or to appropriate the property to his own use or the use of a person not entitled to it, and that the property in question was a firearm. *See* § 812.014(1), (2)(c)5., Fla. Stat.

[9] Petitioner contends that, had counsel made a more detailed motion for judgment of acquittal, "this issue would have been properly preserved for appellate review." (Dkt. 1, p. 11.)  The state court found Petitioner failed to show he would have prevailed had counsel presented a different motion for judgment of acquittal.  As he fails to show prejudice, Petitioner cannot establish that counsel provided ineffective assistance for failing to preserve for appeal any issues that would have been raised in a more specific motion. *See Strickland*, 466 U.S. at 696 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.").

[10] Petitioner asserts in his federal habeas petition that counsel should have raised the following points in the motion for new trial:

postconviction court's summary denial of this claim because the postconviction court applied an incorrect legal standard and did not attach relevant portions of the record to its order. *Young*, 988 So.2d at 651. Upon remand, the postconviction court again denied the claim. It reviewed the arguments raised in the motion for new trial and concluded:

> "A new trial is only required for prosecutorial misconduct where 'it is reasonably evidence that the remarks may have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done.' Thomas v. State, 748 So.2d 970, 984 (Fla. 1999); accord Dufour v. State, 905 So.2d 42, 64 (Fla. 2005)." Smith v. State, —So. 2d—, *30, 2009 WL 702262 (Fla. 2009) (March 19, 2009). . . . Additionally, "[i]n order for the prosecutor's comments to merit a new trial, the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise. Spencer v. State, 645 So.2d 377, 383 (Fla. 1994)." Salazar v. State, 991 So.2d 364, 372 (Fla. 2008).

> [] After reviewing Defendant's motion and argument for new trial, as well as the State's response, the Court finds that the weight of the evidence was sufficient to support the jury verdict of guilty beyond a reasonable doubt on all charges, and that the trial court properly denied Defendant's Motion for New Trial. Furthermore, this Court finds that the postconviction court could have properly summarily denied ground 3 of Defendant's rule 3.850 motion by using the correct legal standard and attaching the proper documents.

(Dkt. 11, Ex. 49, pp. 4-5.)

---

1. That there was no physical evidence or witnesses linking the Petitioner to ever having entered the inside of the victim's car;
2. That there was no testimony that the Petitioner was ever seen with the gun, nor was it ever recovered;
3. There was never a receipt produced for the gun to show that it ever existed;
4. The victim gave inconsistent testimony in that he said the Petitioner dropped the screwdriver on the ground, when Officer Pruitt said it was found on the trunk;
5. There were no fingerprints linking the Petitioner to the crime and there was not an attempt to gather DNA evidence from the car or the jacket that the perpetrator dropped as he was running away, thus no DNA evidence as well;
6. Mrs. Alexander testified in direct contravention to the victim's testimony. She said that the Petitioner was never in the house as Greco claimed, and that she woke her son up, in direct contravention of Greco's claim that the Petitioner woke Jason up; and,
7. Officer Pruitt testified when he arrived the perpetrator was standing by the victim's blue car, which is in direct contravention to the victim testimony that the Petitioner was sitting on the porch stoop when the police arrived.

(Dkt. 1, pp. 16-17.)

The state court found that the denial of Petitioner's motion for new trial was supported by the weight of the evidence. Given the totality of the evidence presented at trial as discussed above in Ground Three, Petitioner does not show that this determination was unreasonable. Nor is he able to demonstrate that he would have prevailed on his motion for new trial even if counsel argued that the verdict was contrary to the weight of the evidence for the reasons he submits. Accordingly, Petitioner does not demonstrate prejudice as a result of counsel's performance. Petitioner does not show that the state court's finding was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.[11] He is not entitled to relief on Ground Five.

**Ground Six**

Petitioner asserts that counsel was ineffective for presenting a misidentification defense because Greco was able to identify him.[12] Petitioner contends in his federal habeas petition that counsel should have argued Petitioner was merely attempting to break into the trunk of Greco's car, but did not actually break the window or take the gun from inside the vehicle. Petitioner asserts that this defense would have been consistent with Greco's testimony that Petitioner acted suspicious when he saw a rifle in the trunk on a previous occasion and would have created reasonable doubt.

The state court conducted an evidentiary hearing on this claim, after which it found:

---

[11] Petitioner appears to argue in his memorandum of law that his due process rights were violated when a successor judge ruled on his postconviction claim upon remand and failed to conduct an evidentiary hearing. Petitioner does not clearly articulate a federal claim. Moreover, an allegation of defects in a state collateral proceeding does not state a claim upon which federal habeas relief can be granted. *See Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010).

[12] Counsel argued at trial that Greco was mistaken in his identification of Petitioner. In closing argument, counsel asserted that Greco did not know Petitioner or his grandmother well and only met Petitioner one time, at the Alexanders' house. Counsel asserted that Greco's recollection of that incident was incorrect because it contradicted Ivon Alexander's testimony, and questioned whether Greco was able to make an accurate identification of the suspect. Counsel also emphasized that Pruitt, the other person at the scene, had some difficulty seeing the suspect. In addition, counsel pointed out the lack of physical evidence in the case, including an absence of fingerprints from the car or tools.

Defendant testified that he told counsel that he did not want to pursue the misidentification defense because he felt like it was not a good defense. Defendant testified that he disagreed with the misidentification defense because the alleged victim, Mr. Greco, had known him for many years and as such, he felt that nobody would believe such a defense. Defendant testified that he wanted to proceed on a theory of innocence. Defendant testified that what merely happened in the instant case was that the alleged victim pulled a gun on him accusing him of trying to break into his stuff. However, Defendant's testimony at the evidentiary hearing is inconsistent with the theory raised in his Motion that he was merely trying to break into the trunk of the vehicle rather than the vehicle itself. Moreover, from the testimony presented at the evidentiary hearing, it is still unclear as to what defense Defendant wanted counsel to pursue. Defendant fails to meet the first prong of the *Strickland* test and, as such, no relief is warranted on ground 4.

(Dkt. 11, Ex. 21, pp. 222-23.)

The record supports the state court's decision that Petitioner did not establish how counsel performed deficiently in presenting a misidentification defense. At the hearing, Petitioner maintained that he wanted counsel to argue actual innocence by asserting that Petitioner was merely walking back to his grandmother's house when Greco pulled a gun on him. (Dkt. 11, Ex. 20, pp. 172-75, 195-96.) As the state court noted, this was inconsistent with the theory presented in Petitioner's postconviction motion, in which he stated that counsel should have argued he was only attempting to break into the trunk of the car.

Petitioner does not establish that counsel was ineffective for not pursing either of these defenses and for instead choosing to question whether Greco accurately identified Petitioner, whom Greco did not know well. "In light of the reasonableness standard set forth by the *Strickland* Court, . . . constitutionally sufficient assistance of counsel does not require presenting an alternative–not to mention unavailing or inconsistent–theory of the case." *Dill v. Allen*, 488 F.3d 1344, 1357 (11th Cir. 2007). "Reasonableness, indeed, suggests that a trial counsel would weigh competing theories and choose to present the most compelling theory among the various options." *Id.* The defense

theory that Petitioner was simply walking back home would not account for Greco's testimony that

he saw Petitioner near the trunk of his car with a screwdriver and hammer.  The theory that Petitioner

only attempted to break into the trunk of the car concedes Petitioner's intent to commit a crime by

gaining access to a part of Greco's car in which a rifle had been located, while asking the jury to

believe that, independent of these actions, someone else happened to break into the interior of the

same car that night and take a gun from the center console.  Petitioner does not meet his burden

under *Strickland* of establishing either deficient performance of counsel or resulting prejudice.

Accordingly, Petitioner does not demonstrate that the state court unreasonably applied clearly

established federal law or unreasonably determined the facts in rejecting his claim.  Ground Six

warrants no relief.

**Ground Seven**

Petitioner contends that counsel was ineffective with regard to the charge of armed burglary

of a conveyance when he did not request jury instructions on the lesser-included offenses of simple

burglary of a conveyance and attempted burglary.  He claims that, because he was not seen actually

breaking into the car or in possession of the firearm that was taken, "[t]he jury would have been

more inclined to exercise its inherent pardon power had counsel requested" these instructions.  (Dkt.

1, p. 21.)  Petitioner claims that the only evidence presented during trial supported a conviction for

attempted burglary.

The state court rejected Petitioner's claim that counsel should have requested an instruction

on attempted burglary:

> With respect to the failure of the Court to give an instruction on Attempt,
> Florida Rule of Criminal Procedure 3.510 provides that trial courts are not required
> to instruct the jury on attempt if there is no evidence to support the attempt.  After

> reviewing the record, the Court finds that the only evidence presented provided a
> completed offense and as such Defendant was not entitled to an instruction on
> Attempt.  Therefore, Defendant fails to meet the second prong of the <u>Strickland</u> test
> and no relief is warranted on this ground.

(Dkt. 11, Ex. 18, p. 99.)  The record supports the state court's finding.  The evidence at trial reflects

that the car window was broken and a gun was missing from the center console inside the car.

Accordingly, Petitioner does not demonstrate that the state court's rejection of this portion of his

claim was an unreasonable application of *Strickland* or was based on an unreasonable determination

of the facts.

The state court conducted an evidentiary hearing on Petitioner's claim that counsel should

have requested a jury instruction on simple burglary.  Petitioner testified that he believed counsel

"took away" the lesser-included instructions, and that the State failed to present evidence he actually

entered Greco's car or took the weapon that was stored there.  (Dkt. 11, Ex. 20, pp. 184, 198.)  After

the hearing, the state court denied this claim:

> As part of the jury instruction for Armed Burglary of a Conveyance, [the] jury was
> instructed that it could not return a verdict of guilty as charged unless it found that
> Defendant used a firearm.  Since by finding Defendant guilty as charged the jury
> found every element of the offense proven beyond a reasonable doubt, Defendant has
> failed to show that there was even a substantial probability that the jury would have
> returned a guilty verdict on the lesser included offense.  <u>See</u> <u>Sanders v. State</u>, 847
> So.2d 504 (Fla. 1st DCA 2003).  Defendant fails to meet the second prong of the
> <u>Strickland</u> test and, as such, no relief is warranted on ground 5.

(Dkt. 11, Ex. 21, p. 223.)

However, the state court granted Petitioner's motion for rehearing, finding that it could not

"conclusively refute Defendant's allegation that he was entitled to a jury instruction for Simple

Burglary." (Dkt. 11, Ex. 25, p. 352.) The state court vacated Petitioner's judgment and sentence and

ordered a new trial.  The state appellate court reversed, holding that Petitioner failed to show

prejudice as a result of counsel's performance.   Although the state appellate court agreed that Petitioner was entitled to a jury instruction on simple burglary as a lesser-included offense, it concluded that the first postconviction court properly denied relief because Petitioner failed to demonstrate prejudice:

> Here, Mr. Young was given an opportunity but failed to demonstrate a reasonable probability that this attorney's allegedly deficient performance so permeated the trial proceeding that the court's confidence in the outcome was undermined. In a similar appeal from the denial of a motion for postconviction relief after an evidentiary hearing, the Fourth District, in *Johnson v. State*, 855 So.2d 1157, 1160 (Fla. 4th DCA 2003) . . . held that even though it was "conceivable" that a jury would decline to follow the law and grant a pardon, the probability was not "reasonable."

> That probability is far less than "reasonable" in this case given the jury's guilty verdict on the charge of grand theft of a firearm.  Nothing in the record before us (which is admittedly slim) suggests that the object of the grand theft was anything other than the firearm with which Mr. Young became armed during the course of the burglary of the vehicle. Thus, as the first postconviction court concluded, the State proved armed burglary beyond all reasonable doubt, rendering any error in the jury instructions harmless.

> In sum, the first postconviction court correctly cited the *Sanders* rationale for the principle that the defendant must actually prove prejudice.  This enormous barrier to postconviction relief cannot be overcome by mere speculation that the jury would have ignored its own fact findings and the judge's legal instructions to find the defendant guilty of a lesser offense.

*Young*, 932 So.2d at 1282-83.  Federal habeas relief on a claim of error in the jury instructions is only available if the instruction "so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72.  The state appellate court determined that, because the State proved armed burglary beyond a reasonable doubt, Petitioner could not show any prejudice as a result of the omission of the simple burglary instruction. This was not an objectively unreasonable conclusion in light of the evidence presented at trial and the jury's finding that Petitioner was guilty of armed burglary of a conveyance, as charged.  Accordingly, Petitioner does not show that any error

with regard to the instruction vitiated the trial so as to violate due process or that counsel was

ineffective for not requesting the instruction.  As the state appellate court did not unreasonably apply

*Strickland* or unreasonably determine the facts when it held that Petitioner failed to show prejudice

as a result of counsel's performance, Petitioner is not entitled to relief on Ground Seven.

**Ground Eight**

Petitioner claims that counsel should have objected to the "stealthy entry" and "flight and

attempt" instructions provided with the jury instruction on armed burglary of a conveyance.[13]  He

claims that the "stealthy entry" instruction was erroneous.  Petitioner asserts that the "flight and

attempt" instruction "constitutes an impermissible judicial comment on the evidence" because it

indicates "that the crime was completed."   (Dkt. 1, p. 24.)   Petitioner raised this claim in his

postconviction motion.  The state court denied it:

> The record reflects that the jury instructions submitted in the present case are the
> standard jury instructions provided by the Florida Standard Jury Instructions in
> Criminal Cases.  (See [F]lorida standard jury instructions, jury instructions used in
> this case, attached).  As such, Defendant fails to meet the first prong of the Strickland
> test and no relief is warranted on this ground.

(Dkt. 11, Ex. 18, p. 99.)

The state court found that the instruction given in Petitioner's case was consistent with the

standard jury instruction.  "Where the claim is merely that a jury instruction was incorrect under state

---

[13] With regard to "stealthy entry," the jury instruction provided:

Proof of the entering of a conveyance stealthily and without the consent of the owner or occupant may
justify a finding that the entering was with the intent to commit a crime if, from all the surrounding
facts and circumstances, you are convicted beyond a reasonable doubt that the intent existed.

(Dkt. 11, Ex. 18, p. 130.)  With regard to "flight and attempt," the jury instruction provided that "[a]n act is committed
'in the course of committing' if it occurs in the attempt to commit the offense or in flight after the attempt or
commission."  (Id., p. 131.)

law, federal habeas relief is not available." *Applewhite v. Secretary, DOC*, 373 Fed. App'x 969, 972 (11th Cir. 2010) (citing *McGuire*, 502 U.S. at 71-72).   Moreover, "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).   *See also Will*, 278 Fed. App'x at 908.   Petitioner does not establish any error in the jury instructions.   Accordingly, he fails to show that the jury instructions undermined the trial so as to violate due process, or that counsel performed deficiently in failing to object to the instructions.   Nor does he demonstrate that he suffered prejudice as a result of counsel's performance.   Because Petitioner cannot show that the state court's decision involved an unreasonable determination of *Strickland* or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Eight.

**Ground Nine**

Petitioner asserts that counsel was ineffective for not objecting to several prosecutorial comments.[14]   First, he asserts that the prosecutor's questioning of Pruitt about comparing latent fingerprints to known rolled prints allowed the jury to infer that Petitioner must have a prior record.[15]

---

[14] The discussion of this claim relies on specific page numbers of the trial transcript that Petitioner cited in his postconviction motion.

[15] The following exchange took place when the State questioned Pruitt on re-direct examination:

Q:     And you were asked by counsel about latents of value from the crime scene and you stated you didn't find any latents of value?

A:     Right.

Q:     Tell the jury, if you can, what a latent print is?

A:     It's a fingerprint that you can actually lift, bring off whatever you may be dusting, the car window or whatever.  It may be that you can actually lift off.

Q:     And how is that compared to a known rolled fingerprint?

A:     What do you mean?

Similarly, Petitioner argues that the prosecutor's reference to him as a "crook" during closing arguments permitted the jury to presume he had a prior record.  The prosecutor stated:

> If you want to identify the biggest piece of evidence in this case is Mr. Greco's memory and Mr. Young's statements to Mr. Greco.  "You know me, I live right down the street in my grandmother's house.  My grandmother lives right down there."  Stupid?  Yeah, yeah.  Not the smartest thing for a crook to do, but he identified himself to his man.

(Dkt. 11, Ex. 2, p. 141.)

Petitioner also argues that the prosecutor improperly characterized the knit cap as a mask during Strickland's testimony, despite a lack of evidence the suspect wore a mask.  The record reflects that, when questioning Strickland, the prosecutor referred to the knit cap Strickland found upon conducting a search of Petitioner's person as a mask.  (Id., p. 80.) Strickland's testimony indicates the knit cap had eye holes cut into it.  (Id.)  Lastly, Petitioner asserts that during closing arguments, the prosecutor improperly made comments such as "I think" or "I believe."  Specifically,

---

Q:      What is a known rolled fingerprint?

A:      It would be like if you went and got printed and I would know that was your prints.

Q:      You would know who's [sic] prints?

A:      Correct.

Q:      If you lift fingerprints by lifting - -

[COUNSEL]:      Objection, counsel testify [sic].

THE COURT:      Sustained.

BY [STATE]:

Q:      Do you know necessarily who they belong to if you lift them at a crime scene?

A:      No, sir.

(Dkt. 11, Ex. 2, pp. 44-45.)

the prosecutor stated that he told the jurors at the start of trial he was going to show them "a fear of all homeowners" and further stated, "I think that's what the case showed you in the State's case." (Dkt. 11, Ex. 2, p. 122.)[16]   The state court denied Petitioner's claim of ineffective assistance for failing to object to the propriety of these comments:

> An improper statement made by the prosecutor may lead to a new trial if the statement will prejudice the jury in its duty to presume the defendant innocent and to weigh impartially the evidence.  See Ruiz v. State, 395 So.2d 556 (Fla. 1991). However, Defendant fails to show how the above comments prejudiced the jury in light of the evidence presented at trial.  As such, Defendant fails to meet the second prong of the Strickland test and no relief is warranted on this ground.

(Dkt. 11, Ex. 18, pp. 99-100.)

To establish a prosecutorial misconduct claim, Petitioner must show that the challenged conduct was both improper and prejudicially affected his substantial rights.  *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995).  Habeas relief is available based upon an improper prosecutorial remark only if it is so egregious that the proceeding is rendered fundamentally unfair.  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  *Darden*, 477 U.S. at 181, further explains:

> The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 [643] . . . (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at

---

[16] Counsel did not object to the prosecutor saying "I think," but counsel's objection to this comment as a golden rule violation was overruled.  (Dkt. 11, Ex. 2, p. 122.)

642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987). Furthermore, "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995). *Accord United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Additionally, closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). Prior to closing arguments, the state trial court instructed the jury that "what the lawyers say during argument is not evidence." (Dkt. 11, Ex. 2, p. 121.) Jurors are presumed to follow the court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).

Considered in context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting convictions amount to a denial of due process. *Tucker*, 802 F.2d at 1296. Petitioner does not establish a reasonable probability that the outcome of trial would have been different had counsel

objected to these remarks, given the totality of the evidence of guilt presented at trial. Accordingly, the record supports the state court's finding that Petitioner failed to meet the prejudice prong of *Strickland*.[17]   Petitioner does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in resolving his claim. He is not entitled to relief on Ground Nine.[18]

Accordingly, it is

**ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk shall enter judgment against Petitioner and close this case.

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(l). A district court must first issue a COA. *Id.* Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id.*; *Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial

---

[17] In his memorandum of law, Petitioner appears to allege that he is entitled to relief as a result of the cumulative effect of counsel's alleged errors. "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 Fed. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)). Petitioner has not met his burden to show that he is entitled to relief on any of the ineffective assistance claims presented in his federal habeas petition. Accordingly, he cannot show that relief is warranted on his claim of cumulative error.

[18] Petitioner further asserts that the trial court abused its discretion when it found that the prosecutorial comments did not warrant a mistrial. To the extent Petitioner attempts to raise an independent claim of trial court error for denying his motion for mistrial, he has failed to raise this claim as one presenting a federal question. Accordingly, the claim is not cognizable in his federal habeas petition. *See Branan*, 861 F. 2d 1507; *Carrizales*, 699 F. 2d 1053. In addition, Petitioner did not bring this claim of trial court error on direct appeal. (Dkt. 11, Ex. 12.) Because he cannot return to state court to file a second direct appeal, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not establish the applicability of an exception to overcome the default. *See id.*

showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefootv. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the Court's procedural rulings were correct, or whether the petition stated a substantial denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

   **DONE AND ORDERED** in Tampa, Florida, on July 27, 2015.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

SA:ml
Copy to:
*Pro se* Petitioner
Counsel of Record